**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| In the Matter of the | ) | |
| **FORT TOTTEN METRORAIL CASES** | ) | |
| **Arising Out of the Events of June 22, 2009** | ) | |
| | ) | |
| | ) | |
| **LEAD CASE: Jenkins v. Washington** | ) | |
| **Metropolitan Area Transit Authority, et al.** | ) | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| **ALL CASES** | ) | |
| | ) | |
| _____ | ) | **Case No. 10-mc-0314 (RBW)** |
| | ) | |
| | ) | |
| **ARINC, INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WASHINGTON METROPOLITAN AREA** | ) | |
| **TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This case is currently before the Court on two motions directed at ARINC, Incorporated's

("ARINC") cross-claim and third-party complaint.  The first is the Washington Metropolitan

Area Transit Authority's ("WMATA") motion to dismiss Count I (Breach of Contract and

Implied Duty of Good Faith and Fair Dealing) and Count III (Contractual Indemnification) of

ARINC's cross-claim, or alternatively, to strike ARINC's request for attorneys' fees pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(f).  See generally Defendant Washington

Metropolitan Area Transit Authority's Motion for Partial Dismissal of ARINC, Inc.'s Cross-Claim or, in the alternative, Motion to Strike ("WMATA's Cross-Claim Mot."). The second is WMATA's motion to dismiss ARINC's Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See generally Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss ARINC, Inc.'s Third-Party Complaint. For the reasons that follow, both WMATA's motion to dismiss Count I and III of the cross-claim and its motion to dismiss ARINC's Third-Party Complaint in its entirety will be granted. These rulings moot WMATA's motion to strike ARINC's request for attorneys' fees.

## I. Background

This case arises out of the collision of two WMATA trains that resulted in the death and injury of multiple passengers and the operator of one of the two trains. On December 17, 2010, ARINC, one of the several defendants in this case, filed a cross-claim against WMATA primarily alleging WMATA's liability based on a contract between the two entities.[1] See Defendant ARINC, Inc.'s Cross-Claim Against Defendant WMATA ("Cross-Claim") at 1-10. "The claims asserted in the [plaintiffs'] Complaint against ARINC relate to the ARINC Advanced Information Management software platform ('AIM system'),"[2] id. ¶ 9, which "[i]n July 2003, ARINC" was responsible for installing as an upgrade of WMATA's existing system, id. This resulted in ARINC and WMATA entering into a "Conformed Contract," an agreement

---

[1] The cross-claim was filed by ARINC against WMATA in regard to the Second Amended Master Complaint filed by the plaintiffs. The Third-Party Complaint filed by ARINC against WMATA concerns a separate complaint filed on behalf of the Estate of Jeanice McMillan, the train operator employed by WMATA who was killed in the accident at issue in this case.

[2] The AIM system is a "supervision and control system" that "was designed to provide . . . information . . . ne[cessary] to monitor traffic flow around the railway and to respond to events such as isolated equipment failures." Cross-Claim ¶¶ 17-18.

that "governs the entire relationship between ARINC and WMATA regarding the sale, licensing and maintenance of the AIM system." Id. ¶ 12.

In its cross-claim, ARINC has alleged WMATA's liability in four different counts, two of which are the subject of WMATA's motion to dismiss: Count I (Breach of Contract and of Implied Duty of Good Faith and Fair Dealing) see id. ¶¶ 52-56; and Count III (Contractual Indemnification) see id. ¶¶ 62-65.  Count I specifically alleges that WMATA breached the Conformed Contract and the implied duty of good faith and fair dealing "by requesting, suggesting and/or encouraging [the p]laintiffs to sue ARINC for the June 22, 2009 accident." Id. ¶¶ 54, 55.  Included in Count I is a request for attorneys' fees.  See id. ¶ 56.  Count III alleges that "[s]hould ARINC be held liable to [the p]laintiffs in excess of the specified liability limitation, WMATA is liable to ARINC for indemnification for all damages entered against ARINC in excess of that limitation of liability." Id. ¶ 65.

ARINC also filed a Third-Party Complaint against WMATA on December 17, 2010.  See Defendant ARINC Inc.'s Third-Party Complaint Against WMATA ("Third-Party Compl.") at 1-12.  "ARINC's Third-Party Complaint seeks recovery from WMATA in connection with the action filed against in on behalf of [the Estate of] Jeanice McMillan, an employee of WMATA who was killed in the Metrorail accident of June 22, 2009." Id. at 1.  Similar to the cross-claim, the Third-Party Complaint primarily alleges liability arising out of the Conformed Contract.  ARINC alleges liability in its Third-Party Complaint through three different counts: Count I (Breach of Contract and of Implied Duty of Good Faith and Fair Dealing) see id. ¶¶ 54-58; Count II (Equitable Indemnification) see id. ¶¶ 59-63; and Count III (Contractual

Indemnification) <u>see id.</u> ¶¶ 64-67.  These claims are essentially identical to those pleaded in the cross-claim.[3]

## II. DISCUSSION

A Rule 12(b)(6) motion to dismiss "tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim" upon which relief may be granted.  <u>Woodruff v. DiMario</u>, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which accomplishes the dual objectives of "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, [the] plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action."  <u>Hinson ex rel N.H. v. Merritt Educ. Ctr.</u>, 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555) (internal quotation marks omitted).  Accordingly, the plaintiff should provide the opposing party and the court with facts sufficient "to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555, in order to permit the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged, <u>see id.</u> at 556.

### A. WMATA's Motion to Dismiss Counts I and III of ARINC's Cross-claim

The issue presented to the Court by WMATA's motion to dismiss Counts I and III of ARINC's cross-claim is whether these claims can be maintained, and if so, whether the Court should grant WMATA's motion to strike ARINC's request for attorneys' fees.  WMATA argues

---

[3] The only significant difference is that the cross-claim includes a claim for Contribution, <u>see</u> Cross-Claim at 13, while the Third-Party Complaint does not.

that (1) Count I fails to state a claim because it was under no duty to refrain from informing the plaintiffs about ARINC's potential involvement in the accident; (2) Count III fails to state a claim because it never agreed to indemnify ARINC; and (3) even if neither count is dismissed, there is no legal basis for ARINC being awarded attorneys' fees.  WMATA's Cross-Claim Mot. at 2-3.

**1.  Count I (Breach of Contract and Implied Duty of Good Faith and Fair Dealing)**

Count I of ARINC's cross-claim fails to allege the necessary elements of breach of a contract.  "In the case of a claim for breach of contract, the complaint must allege four necessary elements in order to effect fair notice: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by [the] breach."  Ihebereme v. Capital One, N.A., 730 F. Supp. 2d 40, 47 (D.D.C. 2010) (internal quotation marks omitted).  It is particularly important to note that "one cannot breach a contract without breaching a particular obligation created under the contract."  Id.

ARINC alleges that "WMATA . . . breached the provisions of the Conformed Contract addressing (1) the purpose of the AIM system; and (2) the parties' responsibility for deficiencies under General Provisions."  Cross-claim ¶ 53.  ARINC contends that "WMATA breached these provisions by requesting, suggesting and/or encouraging [the p]laintiffs to sue ARINC."  Id. ¶ 54.  However, the contractual obligations arising out of these two provisions of the Conformed Contract have no bearing on WMATA's decision to inform the plaintiffs that ARINC may be partially liable for the accident.  In fact, WMATA was under an obligation imposed by the Court to provide the plaintiffs with a list of potential parties who might have liability for the metrorail accident.  October 6, 2009 Order (Walton, J.)  Specifically, in the October 6, 2009 Order, this Court instructed WMATA to "compile a list of the mechanisms, software or other components of

[the metrorail] system that may have contributed to the Metro Red Line train crash and the entities or individuals that may have been responsible for producing and/or maintaining those components." Id. at 2. These circumstances clearly do not support a finding that WMATA breached any obligation arising under the two provisions of the Conformed Contract relied upon by ARINC.

Count I of the cross-claim also fails to show how WMATA breached the implied duties of good-faith and fair-dealing. ARINC alleges that "WMATA has failed to act in good[-]faith by seeking the addition of ARINC as a [d]efendant in this action when WMATA knew that the AIM system is not and could not be responsible for the accident." Cross-claim ¶ 55. Again, WMATA was under a Court-imposed obligation to provide the plaintiffs with a list of parties potentially liable for the metrorail accident. ARINC has therefore failed to show that WMATA acted in bad faith by identifying it as a potential defendant in this case.

For the foregoing reasons, Count I of ARINC's cross-claim will be dismissed. Furthermore, the Court's holding renders the issue as to whether ARINC is entitled to attorneys' fees as to this count moot.

### 2. Count III (Contractual Indemnification)

Count III of ARINC's cross-claim, alleging contractual indemnification, has no legal support under the contract entered into between ARINC and WMATA. ARINC alleges that "[s]hould [it] be held liable to [the p]laintiffs in excess of the specified liability limitation [in the parties' contract], WMATA is liable to ARINC for indemnification," and points to Paragraph 5 of the contract as support for its claim for indemnification. Cross-claim ¶¶ 63-65. That provision provides:

LIMITATION OF LIABILITY

> In no event shall ARINC be liable for any legal theory of loss of profits, revenue, use, data or any other pecuniary cost, whether or not ARINC has been advised of the possibility of such damages . . .

> Without limiting the effect of the above, ARINC's or any affiliate's liability, if any, for damages (including, but not limited to, liability arising out of contract, negligence, unintentional misrepresentation, strict liability in tort or warranty of any kind) shall not exceed five (5) million dollars in addition to any claim under the insurance coverage specified in Special Provisions, Paragraph 16.

Memorandum In Support of WMATA's Motion for Partial Dismissal of ARINC, Inc.'s Cross-Claim Or, In The Alternative, Motion to Strike ("WMATA's Cross-Claim Mem."), Ex. 1 (AIM Software License Agreement) at 2.[4]

Notably, the provision does not include the terms "indemnify" or "indemnification." Moreover, the scope of the provision appears to apply only to liability limitations involving disputes between ARINC and WMATA, as it only discusses the potential liability between the two entities as opposed to providing indemnification for third-party liability. See id. ARINC claims that inclusion of the term "indemnify" in the provisions it is relying upon is unnecessary; however, in each of the cases relied upon by ARINC in its memorandum, the contractual provision at issue included the term "indemnify." See N.P.P. Contractors, Inc. v. John Canning & Co., 715 A.2d 139, 140 (D.C. 1998) (interpreting an agreement that included the clause "shall indemnify and save harmless"); Grunley Constr. Co., Inc. v. Conway Corp., 676 A.2d 477, 478 (D.C. 1996) (interpreting an agreement that also included the clause "shall indemnify and save harmless"); W.M. Schlosser Co., Inc. v. Maryland Drywall Co., Inc., 673 A.2d 647, 653 (D.C. 1996) (interpreting an agreement that included the clause "shall promptly indemnify and save

---

[4] The Court notes that it may consider this document without converting the motion to one for summary judgment because ARINC referenced it in its cross-claim. Savage v. Scales, 310 F. Supp. 2d 122, 129 n.8 (D.D.C. 2004) (explaining that, "where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment" (internal quotation marks omitted)).

and hold harmless"); <u>Am. Bldg. Maint. Co. v. L'Enfant Plaza Props., Inc.</u>, 655 A.2d 858, 860 (D.C. 1995) (interpreting an agreement that included the clause "shall indemnify and hold harmless").

Interestingly, an indemnification agreement similar to those found in the above-mentioned cases was included in the contract between WMATA and ARINC, but it is for the benefit of WMATA. <u>See</u> WMATA's Cross-Claim Mem., Ex. 5 (WMATA Supply and Service Contract) ¶ 15 ("The Contractor [ARINC] will save and keep harmless and indemnify WMATA against any and all liability claims . . . ."). Therefore, it is clear that had the parties intended to include a provision whereby WMATA was obligated to indemnify ARINC for third-party liability (or for any form of liability), the parties would have included a provision expressly imposing such an obligation.

Accordingly, Count III of the cross-claim is dismissed.

### B. WMATA's Motion to Dismiss ARINC's Third-Party Complaint

As to WMATA's motion to dismiss ARINC's Third-Party Complaint, WMATA argues that (1) Count I (Breach of Contract and of Implied Duty of Good Faith and Fair Dealing) fails to state a claim because WMATA was under no duty to refrain from informing the plaintiffs about ARINC's potential involvement in the accident;[5] and (2) the District of Columbia Workers' Compensation Act's exclusivity provision bars ARINC's claims for indemnification asserted in Counts II (Equitable Indemnification) and III (Contractual Indemnification). Memorandum In Support of WMATA's Motion to Dismiss ARINC, Inc.'s Third-Party Complaint ("WMATA's Third-Party Compl. Mem.") at 5, 11.

---

[5] With respect to Count I, WMATA states that "[t]he arguments set forth in the Motion to Dismiss ARINC's Cross-Claim are equally applicable to the identical count set forth in the Third-Party Complaint. . . . WMATA expressly adopts and incorporates those arguments (located at pages 9 - 17 of the Memorandum in Support of WMATA's Motion for Partial Dismissal of ARINC's Cross-Claim or, in the alternative, Motion to Strike) in support of this Motion." WMATA's Third-Party Compl. Mem. at 11.

### 1.  Count I (Breach of Contract and Implied Duty of Good-Faith and Fair-Dealing)

Because Count I of the Third-Party Complaint is identical to Count I of ARINC's cross-claim, there is no need for the Court to repeat its analysis of that issue again here.  See supra Part II.A (reasoning that Count I of the cross-claim must be dismissed because ARINC has failed to show how WMATA breached the contract or the duty of good faith and fair dealing).  Count I of the Third-Party Complaint is therefore dismissed for the same reasons.

### 2.  Counts II (Equitable Indemnification) and III (Contractual Indemnification)

Counts II and III of the Third-Party Complaint must be dismissed as a matter of law. While the claims are identical to Counts II and III of ARINC's cross-claim, the analysis required in the context of WMATA's motion to dismiss is different because the Third-Party Complaint implicates the District of Columbia Workers' Compensation Act ("Act"), D.C. Code §§ 32-1500 to -1504. (2005).  See Myco Inc. v. Super Concrete Co. Inc., 565 A.2d 293, 295-96 (D.C. 1989) ("The triadic relationship between an employer, an injured or deceased employee, and a third[-] party is governed by the [Act] . . .").  "Because an employee is prevented from seeking a tort award from the employer, and because workers' compensation benefits often fall far short of those potential awards, suing the third-party becomes an attractive alternative to make up the difference."  Id. at 296 (internal citations omitted).  That is precisely what occurred in this case: the estate of Ms. McMillan (the deceased WMATA employee) filed suit against ARINC (the third-party) in addition to seeking a workers' compensation award from WMATA (the employer).

"[W]hen the third party, to protect against an adverse monetary judgment, seeks indemnity from the employer for having contributed to or caused the injury for which the

employee seeks damages, that cause of action runs head-on into the exclusivity provision of the Act." Id. at 297. This exclusivity provision provides:

> The liability of an employer prescribed in § 32-1503 shall be exclusive and in the place of all liability of such employer to the employee, his legal representative, spouse or domestic partner, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death.

D.C. Code § 32-1504(a). "[T]he exclusivity provisions of state workers' compensation statutes are generally held to preclude indemnity in all but a few specified instances." Myco, 565 A.2d at 297. For example, "when the third party's claim against the employer is for indemnity pursuant to an express contractual provision, the exclusivity provisions of workers' compensation laws do not bar the indemnification." Id. Similarly, equitable indemnification is permitted "when the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee." Id. at 299.

Here, ARINC alleges contractual indemnification in Count III of the Third-Party Complaint. However, as discussed previously, the Conformed Contract does not obligate WMATA to indemnify ARINC for third-party liability. See supra Part II.B. Although the Act does not prohibit claims for contractual indemnification, ARINC has failed to show the existence of any such contractual provision. For this reason, Count III must be dismissed.

ARINC alleges in Count II that it is entitled to equitable indemnification. See Third-Party Compl. ¶¶ 59-63. In response, WMATA argues that "ARINC has not, and indeed cannot, allege a special legal relationship between it and WMATA that would sustain an equitable indemnity claim that would not offend the exclusivity remedy provisions of the Act." WMATA's Third-Party Compl. Mem. at 10. In support of its argument, WMATA relies on the District of Columbia Court of Appeals decision in Myco, 565 A.2d at 299-300.

In <u>Myco</u>, an employee was electrocuted and killed when using a power washer.  <u>Id.</u> at 294.  The employee's wife not only filed a workers' compensation claim against the decedent's employer, but also filed a wrongful death action against the third-party manufacturer of the power washer.  <u>Id.</u>  The manufacturer then filed a third-party complaint against the employer, claiming that the employer "owed it a legal duty to use and maintain the power washer so as to prevent injury and protect [the manufacturer] from any future legal action."  <u>Id.</u> at 299 (internal quotation marks omitted).  The District of Columbia Court of Appeals rejected the argument, however, reasoning that "[t]he employer's duty of proper use and care of the [manufacturer's product] extends solely to its employees."  <u>Id.</u> at 300.  The court therefore dismissed the claim for equitable indemnification concluding that "[a]bsent a much closer relationship than that which exists between the parties here, any other determination would be stretching the concept of contract out of all relation to reality."  <u>Id.</u> (internal quotation marks and citation omitted).

ARINC attempts to distinguish the present case from <u>Myco</u>, analogizing the facts in this case to those in <u>Howard University. v. Good Food Services, Inc.</u>, 608 A.2d 116 (D.C. 1992).  In <u>Howard University</u>, a food service company "contracted to operate the University's food service facilities."  <u>Id.</u> at 118.  As part of the contract, the company "had day-to-day responsibilities such as keeping the kitchen facilities clean, supervising [its] employees in the kitchens, and implementing University food service policies."  <u>Id.</u> at 119.  An employee of the company, who was injured while using a utensil in the University's kitchen, filed a workers' compensation claim against the company, and also filed a negligence claim against the University.  <u>Id.</u>  The University, in turn, "filed a third-party complaint against [the company] . . . seeking indemnification."  <u>Id.</u>  The court found that a special legal relationship existed between the University and the company, which permitted a claim for equitable indemnification to go

forward.[6]  Id. at 124.   In reaching its conclusion, the Howard University court found that "[u]nlike the situation in Myco, which involved a one-time sale of equipment with follow-up service, the [food service company and the University] had an ongoing and comprehensive contractual relationship involving day-to-day interaction and decision making."  Id.

Here, because the relationship between ARINC and WMATA is analogous to the facts in Myco, and not those in Howard University, Count III of ARINC's cross-claim will be dismissed. While it is true, as ARINC points out, that "[t]he Conformed Contract states that WMATA personnel are responsible for maintenance of the AIM system," ARINC's Opposition to Motion to Dismiss Third-Party Complaint at 9, that responsibility created a relationship materially distinguishable from the contractual relationship that existed in Howard University where there were day-to-day obligations and responsibilities between the two parties.  Instead, similar to the employer in Myco, WMATA's duty of proper use and care of ARINC's product only extends to its employees, not to ARINC.  See Myco, 565 A.2d at 300 ("The employer's duty of proper use and care of the [manufacturer's product] extends solely to its employees.").  Accordingly, the relationship between ARINC and WMATA "involved a one-time sale of equipment with follow-up service," rather than "an ongoing and comprehensive contractual relationship involving day-to-day interaction and decisionmaking."  See Howard University, 608 A.2d at 124.

For the foregoing reasons, Counts II and III of ARINC's Third-Party Complaint must be dismissed.

---

[6] Even though the court found the potential for equitable indemnification, the University's claim for indemnification was later denied on separate grounds.  Id. at 125.

### III. Conclusion

For the reasons set forth above, WMATA's motion to dismiss Counts I and III of ARINC's cross-claim is granted. Count I of the cross-claim is dismissed because it fails to state a claim as a result of ARINC's failure to show how WMATA breached a duty it owed to ARINC when it informed the plaintiffs about ARINC's potential liability when WMATA was under an obligation imposed by the Court to inform the plaintiffs of ARINC's potential liability. The dismissal of Count I of ARINC's cross-claim renders its claim for attorneys' fees moot. Count III of the cross-claim is also dismissed because it fails to state a claim as WMATA had no contractual obligation to indemnify ARINC.

Finally, WMATA's motion to dismiss ARINC's Third-Party Complaint in its entirety is granted. Count I of the Third-Party Complaint is dismissed because it fails to state a claim for the same reasons Count I of the cross-claim fails to do so. Counts II and III of the Third-Party Complaint are both dismissed as Count II is barred by the District of Columbia Workers' Compensation Act and ARINC has failed to show the existence of any contractual indemnification provision, which is required for the advancement of Count III.[7]

**SO ORDERED** this 2nd day of September, 2011.

REGGIE B. WALTON
United States District Judge

---

[7] A separate Order will be issued contemporaneously with this Memorandum Opinion.